Fisher *v.* Stevens Coal Company, Appellant.

Argued October 29, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

The facts are stated in the opinion of the court below, by CUMMINGS, J., as follows:

Plaintiff instituted his action in assumpsit in the above stated case against the defendant to recover the sum of one ($1) dollar, alleged to be due him from the defendant for work and labor done as a miner in its Cameron Colliery. He alleged in his statement of claim

that at the time of bringing suit, and for a long time prior thereto, he was an employee of the defendant company, engaged as a miner at its Cameron Colliery. He further alleges and proved a written contract of employment with himself and others, dated October 8, 1937, under which defendant agreed to pay to him the sum of three and 45-100 ($3.45) dollars per mine car of coal, loaded and delivered to the nearest point in the No. 179 tunnel, it being agreed that the price stated in the contract was on the basis of the then present rates paid at the Cameron Colliery,—if any changes were made during the life of the agreement in the rates by the anthracite industry, the corresponding increase or decrease shall be paid by the coal company or allowed by the contractor.

He averred that between June 16, and June 30, 1938, he performed work and labor for which there was due and owing him the sum of seventy-nine and 72-100 ($79.72) dollars, but the defendant on July 13, 1938 (the pay-day), had paid him only seventy-eight and 72-100 ($78.72) dollars, having illegally and unlawfully withheld from him the sum of one ($1) dollar, to recover which this action was brought.

The defendant filed an affidavit of defense, admitting all of the facts herein stated, with the exception it denied there was due plaintiff on July 13, 1938, for the working period commencing June 16th and ending June 30th, the sum of seventy-nine and 72-100 ($79.72) dollars, and alleged that the net sum due him was seventy-eight and 72-100 ($78.72) dollars, alleging that on said July 13, 1938, plaintiff had signed a receipt in full for all claims for work done from the 16th to the end of the month of June.

Under the heading "New Matter", the defendant alleged that on May 7, 1936 all of defendant's employees, including the plaintiff, were members of a labor organization known as Local Union No. 160 District No. 9, United Mine Workers of America; said local

union was one of the constituent organizations of District No. 9, United Mine Workers of America, and subject to the jurisdiction of the district officers and district organization of District No. 9, United Mine Workers of America, and on that date, Stevens Coal Company, through its representatives entered into a written contract with Districts Nos. 1, 7 and 9, United Mine Workers of America, wherein and whereby the hours, working time, the rates of pay, collection of dues and assessments, etc., are regulated and provided for; in said written agreement, in section 6, it is provided as follows:

"Any operator, upon receipt of a proper assignment from an employee, either direct or through an authorized agent of the United Mine Workers of America, shall deduct dues and assessments from the earnings of such employee, and shall transmit same, not later than the 15th day of each succeeding month, to the district secretary-treasurer of the United Mine Workers of America, in the district in which the mine is located. Dues deducted as above provided shall not exceed one ($1) dollar per man per month, and assessments authorized and levied by the International Executive Board of the United Mine Workers of America shall not exceed two ($2) dollars per man in any calendar year. In the collection of such assessments, not more than one ($1) dollar shall be deducted in any one month."

That on the     day of November, 1937, by written agreement between the mine operators and the United Mine Workers of America, the expiration of the contract of May 7, 1936, was extended for a further period of one (1) year, namely, April 30, 1939; that on or about June 6, 1936, the plaintiff Isaac Fisher, executed and delivered to the defendant, Stevens Coal Company, the following order or contract, to wit:

"Stevens Coal Company

Breaker ............

Mine Cameron

Date

June 26, 1936

Local Union No. 160

District No. 9.

I, the undersigned, hereby authorized the above named Company to deduct from my earnings, and thereafter transmit the amounts applicable to union dues, assessments and initiation fee as provided in Paragraph (6) of the agreement between said company and United Mine Workers of America, dated May 7, 1936, which paragraph is printed on the reverse side hereof.

(Signed) Isaac Fisher,

Name.

Check No. ............

Gilbert Stank.

Witness."

On the reverse side of said order or contract is printed the provisions of the contract of May 7, 1936 and heretofore referred to.

In pursuance of the order or contract of plaintiff, dated June 26, 1936—filed with the defendant, authorizing it to collect dues of the plaintiff as a member of Local No. 160, United Mine Workers of America, it did, on July 13, 1938, deduct from plaintiff's pay the sum of one ($1) dollar for union dues for the United Mine Workers of America.

Plaintiff was a contract miner and the contract upon which he sues was made while plaintiff was a member of the United Mine Workers of America and during the life of the contract between the defendant and the United Mine Workers of America.

The contract between plaintiff and defendant was made with special reference to the contract between the defendant and the United Mine Workers of America—and was under, subject to and was governed by

the said contract between defendant and United Mine Workers of America, which, inter alia, adopted the award of the Anthracite Coal Commission in 1903 and the subsequent contracts between the anthracite operators and the United Mine Workers of America, which provided for the payment of contract miners.

That it has been for thirty years, the custom in the anthracite coal mining regions, for all anthracite coal mining companies, and of the defendant since the beginning of its operations in 1932, to make written contracts similar to the one here in suit, covering certain sections of the mine, in which the miner agrees to mine the coal, specifying the area and incorporating the rates of pay, in accordance with those provided between the defendant and the United Mine Workers of America; said custom and usage was and is universal throughout the anthracite coal industry and was and is certain, uniform, continuous and notorious and well known to the plaintiff, who has himself followed said custom for years.

In plaintiff's reply to new matter, he admits that on May 7, 1936, all of the defendant's employees, including plaintiff, were members of Local No. 160, District No. 9, of the United Mine Workers of America, said Local Union on said date was one of the constituent organizations of District No. 9 of the United Mine Workers of America, subject to the jurisdiction of the district officers and district organization of District No. 9, United Mine Workers of America; that on May 7, 1936, Stevens Coal Company entered into a written contract with Districts Nos. 1, 7, and 9, United Mine Workers of America, as alleged in the answer.

In making the agreement of May 7, 1936, all locals in said District No. 9 were represented by Mart Brennan and others as alleged in the answer.

Plaintiff also admitted that the agreement contained section (6), as set out in the answer; admitted on the    day of November, 1937, a written agreement was

entered into, by which the expiration of the contract of May 7, 1936 was extended to April 30, 1939.

Plaintiff likewise admitted that on or about June 6, 1936, Isaac Fisher executed and delivered to defendant the order or contract for deduction of dues from earnings, as provided in paragraph 6 of the agreement between the defendant company and the United Mine Workers of America.,

It is also admitted, as alleged in the affidavit of defense, that plaintiff was a contract miner, and the contract upon which he sued, was made while he was a member of the United Mine Workers of America, and during the life of the contract between the United Mine Workers of America and the defendant.

It is also admitted, alleged in defendant's new matter, that the one ($1) dollar deducted from plaintiff's wages, was for union dues for the United Mine Workers of America. However, it is alleged in the answer, that on June 6, 1938, plaintiff and other employees, including all of the employees of the defendant company, filed with the defendant a notice as follows:

"We, the undersigned employees of the Stevens Coal Company, employed at the Cameron Colliery, Shamokin, Pa., hereby notify our employer that we, individually and collectively, have voluntarily relinquished our mem bership in Cameron Local No. 160, United Mine Workers of America, and have surrendered the Charter of said Local No. 160 to the proper officers of District No. 9 United Mine Workers of America.

It is our desire that the assignment executed by each of us during the month of June, 1936, by means of which the sum of $1 was deducted from our pay for each and every month thereafter, together with various assessments be revoked, and it is hereby revoked as of the date of the presentation of this petition to our employer.

We therefore, ask that the full pay to which each and every undersigned employee is entitled, shall be

paid to him without any deduction whatever for union dues, commencing immediately."

Regardless of the above notice, defendant on *June* 13, 1938, deducted from plaintiff the sum of one ($1) dollar as union dues; that said dues were deducted by defendant from plaintiff's wages, regardless of the fact that plaintiff was not a member of the United Mine Workers of America at the time said wages were earned, to wit, from June 16 to June 30, 1938; that defendant, through its superintendent, George H. Jones, admitted the receipt of the notice hereinabove referred to.

Plaintiff denies, as alleged in defendant's answer, that the contract between plaintiff and defendant, was made with special reference to the contract between the defendant and the United Mine Workers of America, and was under and subject to and governed by the said contract between defendant and the United Mine Workers of America; that the contract upon which plaintiff sued is a contract entered into between one, *Walter* Fisher, (intended as Isaac Fisher, plaintiff) and the defendant. The contract makes no reference to any other agreement or contract and is the agreement between the plaintiff and defendant, upon which the plaintiff relies and under which the plaintiff performed his work and labor for the defendant, in pursuance of which defendant paid out to plaintiff the wages contained in exhibit "B", attached to plaintiff's statement.

At the trial of the case, the following records or papers were offered in evidence: agreement of employment of plaintiff by defendant, dated October 8, 1937; paper signed and delivered by plaintiff, dated June 26, 1936, authorizing defendant to deduct from his wages dues payable to the United Mine Workers of America, directing it to deduct from plaintiff's earnings and thereafter transmit the amounts applicable to union dues, assessments, etc., provided for in the 6th paragraph of the agreement between the company and the United Mine Workers of America; agreement between oper-

ators of district No. 9, United Mine Workers of America, including the Stevens Coal Company, dated May 7, 1936; agreement between operators and United Mine Workers of America, including the Stevens Coal Company, extending the time of expiration of the former agreement, which expired May 7, 1936, to November 13, 1937.

At the trial of the case, it was admitted that on June 6, 1938, Isaac Fisher and certain other employees of the defendant company, filed with the Stevens Coal Company, defendant, a written notice that they had voluntarily relinquished their membership in Local No. 160, United Mine Workers of America, and expressing their desire to revoke and revoking, as of that date, the assignment executed June 26, 1936, by means of which the sum of one ($1) dollar was deducted each month from their pay and demanding their cards of the check-off system and its discontinuance, and the payment to them of all check-offs, not including death fund, and that pursuant to its contract with the United Mine Workers of America, and the order of the plaintiff, it did, during the second half of the month of June, 1938, deduct from plaintiff's pay the sum of one ($1) dollar for union dues, which is claimed by plaintiff in this suit.

There being no facts in dispute, the testimony being that of records only, the court directed a verdict in favor of the plaintiff, reserving the question of whether or not plaintiff could revoke the writing authorizing the defendant company to deduct from his wages the union dues.

Defendant moved for judgment n. o. v. This motion raises the following questions:

1. Could plaintiff withdraw his membership in the United Mine Workers of America?

2. Was the written notice of plaintiff, dated June 26, 1936, authorizing the Stevens Coal Company to deduct union dues from his wages, revoked by plaintiff's

written notice of June 6, 1938 to the defendant company?

The record in this case does not disclose anything with relation to voluntary or other withdrawal from the United Mine Workers of America by a member thereof. That plaintiff could voluntarily, withdraw, there can be no question.

In *Mische et al. v. Kaminski,* 127 Pa. Superior Ct. 66 at 92, which was an equity proceeding instituted by persons who had withdrawn from the U. M. W. A. and were employed and working in one of the Susquehanna's collieries, and who were interfered with by United Mine Workers of America, and while the question was not necessary to the disposition of the case, the Superior Court expressed our views with relation to the withdrawing members in the following language:

"These plaintiffs left the old union before the present difficulty began. Whether they had just cause for complaint within the order is not a question before us. They had a legal right to leave the order and they did so, and the acts complained of in this bill followed in the wake of their leaving."

(An appeal was refused by the Supreme Court on Oct. 6, 1937.)

As to the second question—at the time of the signing of the contract of May 7, 1936, by the Stevens Coal Company with the United Mine Workers of America, plaintiff was a member of the United Mine Workers of America, Local No. 160, District No. 9 and executed and delivered his authorization in writing, authorizing it to deduct from his earnings his dues to the United Mine Workers of America.

It is also admitted that on October 8, 1937, when plaintiff entered into his contract of employment with defendant, which was more than a year after execution of the agreement between defendant and the United Mine Workers of America, he was a member of the United Mine Workers of America.

It is likewise admitted in the record that plaintiff, together with all other employees of the Stevens Coal Company, voluntarily withdrew membership in the United Mine Workers of America, surrendered the Charter of Local No. 160, of which they were members and notice of their action was given to Stevens Coal Company on June 6, 1938, in which the authorization of June 26, 1936, to Stevens Coal Company to deduct from their future earnings dues for the United Mine Workers of America was cancelled.

The one ($1) dollar involved in this case was deducted from wages earned by plaintiff after the service of notice on the defendant company of the voluntary withdrawal of plaintiff from the United Mine Workers of America, and the cancellation of the authorization to deduct wages for dues.

Plaintiff having voluntarily withdrawn his membership in the United Mine Workers of America, at the time of earning the wages from which the one ($1) dollar dues was deducted by defendant company, plaintiff was no longer a member of the United Mine Workers of America and owed it no dues. United Mine Workers of America could not have collected from plaintiff. The defendant company, agent of plaintiff, having had notice of the withdrawal of plaintiff, had no legal right as such agent to deduct from plaintiff's wages, dues which were not owing by him.

Although dictum, the Superior Court expressed our views relative to the facts in this case in opinion filed in interpleader proceedings in *Fisher v. Stevens Coal Company*, 136 Pa. Superior Ct. 394, 408, in the following language:

"It is clear that the position in which Stevens Coal Company finds itself is due to its own actions in signing the contract of May 7, 1936 with U. M. W. A. without making any provision or exception for the voluntary withdrawal of its employees from said U. M. W. A. during the term of said contract, and in later signing

the contract with Isaac Fisher of October 8, 1937, agreeing to pay him $3.45 per mine car of coal loaded, without making any provision for withholding union dues to U. M. W. A. If in so doing it has made itself liable to pay either or both of said parties it cannot require them to interplead, for having entered into contracts with each of them, it cannot escape the liability which may flow therefrom by paying the money into court and calling upon them to interplead."

Moreover, had defendant exercised its rights reserved in the contract of October 8, 1937 with Isaac Fisher, it would have relieved itself from the position in which it now is. Paragraph 8 of this contract reads:

"It is hereby expressly agreed and distinctly understood that the coal company has the right to terminate this agreement at any time it may determine to do so."

The writing of plaintiff, under date of June 26, 1936, authorizing the deduction of dues is indefinite, there being no time expressed when said deduction is to cease —whether it be during the lifetime of the plaintiff, for a number of years or during the time of his employment by defendant. It is a general and indefinite writing and therefore revocable at will.

We, therefore, hold that plaintiff had a right to and did voluntarily withdraw his membership from the U. M. W. A.; that due and timely notice of such withdrawal was given the defendant company; that the authorization of plaintiff to defendant to deduct from his wages dues in the United Mine Workers of America was revoked and cancelled and defendant illegally deducted from plaintiff's wages the one ($1) dollar at issue in this case.

## Order

And now, to wit, July 22, 1940, for the above reasons, the motion for judgment n. o. v. is dismissed. The prothonotary is hereby directed, upon the payment of jury fund, to enter judgment on the verdict in favor of

126

the plaintiff, Isaac Fisher and against the defendant, Stevens Coal Company, in the sum of one ($1) dollar and interest from the date of the verdict. All exception is noted and bill sealed for the defendant.

Defendant appealed.

*Charles C. Lark,* with him *Charles B. Waller,* for appellant.

*H. F. Bonno,* for appellee.

PER CURIAM, January 30, 1941:

The judgment in the court below in favor of the plaintiff is fully sustained by the opinion of Judge CUMMINGS discharging defendant's rule for judgment non obstante veredicto and ordering the prothonotary to enter judgment on the verdict. See Reporter's Statement.

We may add that the opinion and order of the National Labor Relations Board, filed January 5, 1940, in the matter of Stevens Coal Company and Progressive Mine Workers of America, proceedings Nos. R-1536, R-1537, R-1538, before the National Labor Relations Board, admitted in evidence in the court below as Defendant's Exhibit 4, "for such consideration as it is entitled to"—although in the view of the lower court not strictly relevant to the issue being tried—relating, as they do, to a proceeding or proceedings brought before that Board on April 24, 1939, and hearings had thereon *over a year after the bringing of this action* on July 15, 1938, have no relevance or authority in the determination of this case.

Judgment affirmed.